# UNITED STATES DISTRICT COURT

for the
District of South Dakota

In the Matter of the Search of:

USA vs. 22-87-05

)
)
)
)
)
)

Case Number: 5:22-MJ-97

## APPLICATION FOR A SEARCH WARRANT "REDACTED"

I, a federal law enforcement officer, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See "Attachment A", which is attached to and incorporated in this Application and Affidavit

located in the District of _____South Dakota_____, there is now concealed *(identify the person or describe the property to be seized)*:

See "Attachment B", which is attached to and incorporated in this Application and Affidavit

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☒ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☐ property designed for use, intended for use, or used in committing a crime;
☒ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. §§ 1201(a)(5) and 2 | Kidnapping |
| 18 U.S.C. §§ 2119(1) and 2 | Carjacking |
| 18 U.S.C. §§ 924(c)(1)(A)(ii) and 2 | Use and Brandishing of a Firearm during the Commission of a Crime of Violence |

The application is based on these facts:

☒ Continued on the attached affidavit, which is incorporated by reference.
☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.
☐ Your applicant requests that no notice be given prior to the execution of the search warrant, i.e., "no knock", the basis of which is set forth in the attached affidavit.
X  Your applicant requests authorization to serve the search warrant any time day or night pursuant to Fed. R. Crim. P. 41(e)(2)(A)(ii), the basis of which is set forth in the attached affidavit.

_____
*Applicant's signature*

Christopher Reinke, Special Agent, FBI
*Printed name and title*

Sworn to before me and: ☒ signed in my presence.
☐ submitted, attested to, and acknowledged by reliable electronic means.

Date: **5-23-22**

_____
*Judge's signature*

City and state: _Rapid City, SD_____

Daneta Wollmann, U.S. Magistrate
*Printed name and title*

# UNITED STATES DISTRICT COURT
### for the
District of South Dakota

In the Matter of the Search of:

|  |  |  |
|---|---|---|
| USA vs. 22-87-05 | ) ) ) | Case Number: 5:22-MJ-97 |

## SEARCH AND SEIZURE WARRANT   "REDACTED"

To: Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the District of __South Dakota__ *(identify the person or describe the property to be searched and give its location)*:

See ATTACHMENT A, attached hereto and incorporated by reference.

I find that the affidavit, or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

Evidence of a crime of kidnapping, in violation of 18 U.S.C. §§ 1201(a)(5) and 2; carjacking, in violation of 18 U.S.C. §§ 2119(1) and 2, and use and brandishing of a firearm during the commission of a crime of violence, in violation of 18 U.S.C. §§ 924(c)(1)(A)(ii) and 2, as described in ATTACHMENT B, attached hereto and incorporated by reference).

**YOU ARE COMMANDED** to execute this warrant on or before __June 6, 2022__ *(not to exceed 14 days)*

☐ in the daytime  6:00 a.m. to 10 p.m.    ☒ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to __Daneta Wollmann__.
*(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☒ for __30__ days *(not to exceed 30).*    ☐ until, the facts justifying, the later specific date of _____.

☐ I find that good cause has been established to authorize the officer executing the search warrant to not provide notice prior to the execution of the search warrant, i.e., "no knock".

Date and time issued: __5-23-22  2:15pm__    _____
*Judge's signature*

City and state:   __Rapid City, SD__    __Daneta Wollmann, U.S. Magistrate__
*Printed name and title*

CC: AUSA Patterson

| **Return** "REDACTED" | | |
|---|---|---|
| Case No.:<br><br>5:22-MJ-97 | Date and time warrant executed: | Copy of warrant and inventory left with: |
| Inventory made in the presence of : | | |

Inventory of the property taken and name of any person(s) seized:

**Certification**

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
WESTERN DIVISION

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH META PLATFORMS, INC. USERS THAT IS STORED AT PREMISES CONTROLLED BY META PLATFORMS, INC.<br><br>USA v. 22-87-05 | Case No. <u>5:22-MJ-97</u><br><br>**Filed Under Seal**   "REDACTED" |

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

State of South Dakota )
 ) ss
County of Pennington )

I, Chris Reinke, Special Agent of the Federal Bureau of Investigation FBI

being duly sworn, states as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I am a Special Agent (SA) with the Federal Bureau of Investigation (FBI),

and I am assigned to the Rapid City Resident Agency, Rapid City, South Dakota.

I have approximately eight years of law enforcement experience with the FBI as

a Special Agent. As an FBI Special Agent, I am assigned to investigation violation

of federal law, including violations of 18 U.S.C. §§ 1201(a)(5) and 2 (kidnapping),

18 U.S.C. §§ 2119(1) and 2 (carjacking), and 18 U.S.C. §§ 924(c)(1)(A)(ii) and 2

(use and brandishing a firearm during the commission of crime of violence).

2.     The information set forth below is based upon my knowledge of an investigation conducted by the FBI and the investigation of other law enforcement agents and officers.  I have not included each and every fact obtained pursuant to this investigation, but have set forth those facts that I believe are essential to establish the necessary probable cause for the issuance of the search warrant.

3.     I make this affidavit in support of an application for a search warrant for information associated with a certain Meta Platforms, Inc.  user ID that is stored at premises owned, maintained, controlled, or operated by Meta Platforms, Inc. Inc. ("Meta Platforms, Inc."), a social networking company headquartered in Menlo Park, California.  The information to be searched is described in the following paragraphs and in Attachment A.  This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 1201(a)(5) and 2 (kidnapping), 18 U.S.C. §§ 2119(1) and 2 (carjacking), and 18 U.S.C. §§ 924(c)(1)(A)(ii) and 2 (use and brandishing a firearm during the commission of crime of violence), to require Meta Platforms, Inc.  to disclose to the government records and other information in its possession pertaining to the subscriber or customer associated with the user ID, as described in Attachment B.

4.     The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses.  This affidavit is intended to show merely that there is sufficient probable cause for

the requested warrant and does not set forth all of my knowledge about this matter.

5.    Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that evidence of violations of the Target Offenses are present in the accounts of Meta Platforms, Inc.



that are stored at premises controlled by Meta Platforms, Inc.  Inc. (hereinafter "the accounts").    There is also probable cause to search the information described in Attachment A for evidence, contraband, or fruits of these crimes, as further described in Attachment B.

## PROBABLE CAUSE

6.    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

7.    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

8. █████████████████████████████████████████████████

9. █████████████████████████████████████████████████

10. ████████████████████████████████████████████████

4

11. ███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
██████████████████████████████

12. ██████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
████████████

13. ██████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
█████████████████████

14. ██████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
████████████████████████

15. ███████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████

16. ███████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
██████████████

17. ███████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████

18. ███████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
██████████

19. ███████████████████████████████████████████████████
████████████████████████████████████████████████████

20. 

21. 

22. 

23.

24. ██████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
██████████████████████████████████████████

25. ██████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
██████████████████████████████████████

26. ██████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████

27. ██████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████

28. ███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████

29. ███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████

30. ███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
██████████

31. ███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
██████████████

32. ███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
████████████████████████████████████

9

33. [REDACTED]

34. [REDACTED]

35. ████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
███████████████████████████████

36. ████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████

37. ████████████████████████████████████████████████████
████████████████████████████████████████████████████
██████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████

39. ████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
███████

40. ████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
███████

41. ████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████

42.

43.

44.

45.

46.

47.

48. ████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████

49. A█████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████████

50. ████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████

51. ████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████████████████

52.

53.

54. ████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████

55. O████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████

56. ████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████

57. ████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████

58. ████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████



59.

60.

19

61.    Your affiant is requesting a search warrant authorizing the search and seizure of ██████Meta Platforms, Inc. account. Your affiant believes there is probable cause to search the account based on the information outlined above.

## CONCLUSION

62.    Your affiant is requesting a search warrant authorizing the search and seizure of ████████████████Meta Platforms, Inc. account. Your affiant believes there is probable cause to search ██████Meta Platforms, Inc. account for evidence of violations of 18 U.S.C. §§ 2119(1) and 2 (carjacking), 18 U.S.C. § 924(c)(1)(A)(ii) (use and brandishing of a firearm during the commission of a crime of violence), 18 U.S.C. §§ 1201(a)(5) and 2 (kidnapping) occurring on or about ████████.

63.    Your affiant believes that a search of ██████ Meta Platforms, Inc. may provide evidence of communications between ██████ and the others involved as well as provide information confirming ██████ whereabouts at the time of the events outlined above. Additionally, a search of the account will provide GPS coordinates and the last IP address and or location of his cell phone at certain time periods on ████████████ the present. (If location services are enabled). Your affiant's office has preserved ██████ account.

## INFORMATION ON META PLATFORMS, INC.

64.    Meta Platforms, Inc. owns and operates a free-access social networking website of the same name that can be accessed at http://www.Meta Platforms, Inc.  Meta Platforms, Inc. allows individuals to specifically communicate with

20

another person through a Meta Platforms, Inc. application called "Messenger." In my training and experience, people who engage in online criminal activity often also utilize Meta Platforms, Inc., to meet victims and other offenders and to chat. Even if Meta Platforms, Inc. was not utilized in the chat at issue, there is probable cause to believe there will be evidence regarding the online solicitation of minors within the target Meta Platforms, Inc. account.

65. Meta Platforms, Inc. owns and operates a free-access social networking website of the same name that can be accessed at http://www.Facebook.com. Meta Platforms, Inc. allows its users to establish accounts with Facebook, and users can then use their accounts to share written news, photographs, videos, and other information with other Meta Platforms, Inc. users, and sometimes with the general public.

66. Meta Platforms, Inc. asks users to provide basic contact and personal identifying information to Meta Platforms, Inc., either during the registration process or thereafter. This information may include the user's full name, birth date, gender, contact e-mail addresses, Meta Platforms, Inc. passwords, Meta Platforms, Inc. security questions and answers (for password retrieval), physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers. Meta Platforms, Inc. also assigns a user identification number to each account.

67. Meta Platforms, Inc. users may join one or more groups or networks to connect and interact with other users who are members of the same group or

network. Meta Platforms, Inc. assigns a group identification number to each group. A Meta Platforms, Inc. user can also connect directly with individual Meta Platforms, Inc. users by sending each user a "Friend Request." If the recipient of a "Friend Request" accepts the request, then the two users will become "Friends" for purposes of Meta Platforms, Inc. and can exchange communications or view information about each other. Each Meta Platforms, Inc. user's account includes a list of that user's "Friends" and a "News Feed," which highlights information about the user's "Friends," such as profile changes, upcoming events, and birthdays.

68. Meta Platforms, Inc. users can select different levels of privacy for the communications and information associated with their Meta Platforms, Inc. accounts. By adjusting these privacy settings, a Meta Platforms, Inc. user can make information available only to himself or herself, to particular Meta Platforms, Inc. users, or to anyone with access to the Internet, including people who are not Meta Platforms, Inc. users. A Meta Platforms, Inc. user can also create "lists" of Meta Platforms, Inc. friends to facilitate the application of these privacy settings. Meta Platforms, Inc. accounts also include other account settings that users can adjust to control, for example, the types of notifications they receive from Meta Platforms, Inc.

69. Meta Platforms, Inc. users can create profiles that include photographs, lists of personal interests, and other information. Meta Platforms, Inc. users can also post "status" updates about their whereabouts and actions, as well as

links to videos, photographs, articles, and other items available elsewhere on the Internet. Meta Platforms, Inc. users can also post information about upcoming "events," such as social occasions, by listing the event's time, location, host, and guest list. In addition, Meta Platforms, Inc. users can "check in" to particular locations or add their geographic locations to their Meta Platforms, Inc. posts, thereby revealing their geographic locations at particular dates and times. A particular user's profile page also includes a "Wall," which is a space where the user and his or her "Friends" can post messages, attachments, and links that will typically be visible to anyone who can view the user's profile.

70.    Meta Platforms, Inc. allows users to upload photos and videos, which may include any metadata such as location that the user transmitted when s/he uploaded the photo or video. It also provides users the ability to "tag" (i.e., label) other Meta Platforms, Inc. users in a photo or video. When a user is tagged in a photo or video, he or she receives a notification of the tag and a link to see the photo or video. For Meta Platforms, Inc. 's purposes, the photos and videos associated with a user's account will include all photos and videos uploaded by that user that have not been deleted, as well as all photos and videos uploaded by any user that have that user tagged in them.

71.    Meta Platforms, Inc. users can exchange private messages on Meta Platforms, Inc. with other users. These messages, which are similar to e-mail messages, are sent to the recipient's "Inbox" on Meta Platforms, Inc., which also stores copies of messages sent by the recipient, as well as other information.

Meta Platforms, Inc. users can also post comments on the Meta Platforms, Inc. profiles of other users or on their own profiles; such comments are typically associated with a specific posting or item on the profile. In addition, Meta Platforms, Inc. has a Chat feature that allows users to send and receive instant messages through Meta Platforms, Inc. These chat communications are stored in the chat history for the account. Meta Platforms, Inc. also has a Video Calling feature, and although Meta Platforms, Inc. does not record the calls themselves, it does keep records of the date of each call.

72. If a Meta Platforms, Inc. user does not want to interact with another user on Meta Platforms, Inc., the first user can "block" the second user from seeing his or her account.

73. Meta Platforms, Inc. has a "like" feature that allows users to give positive feedback or connect to particular pages. Meta Platforms, Inc. users can "like" Meta Platforms, Inc. posts or updates, as well as webpages or content on third party (*i.e.*, non-Meta Platforms, Inc.) websites. Meta Platforms, Inc. users can also become "fans" of particular Meta Platforms, Inc. pages.

74. Meta Platforms, Inc. has a search function that enables its users to search Meta Platforms, Inc. for keywords, usernames, or pages, among other things. Each Meta Platforms, Inc. account has an activity log, which is a list of the user's posts and other Meta Platforms, Inc. activities from the inception of the account to the present. The activity log includes stories and photos that the user has been tagged in, as well as connections made through the account, such as

"liking" a Meta Platforms, Inc. page or adding someone as a friend. The activity log is visible to the user but people who visit the user's Meta Platforms, Inc. page cannot viewed it.

75. Meta Platforms, Inc. Notes is a blogging feature available to Meta Platforms, Inc. users, and it enables users to write and post notes or personal web logs ("blogs"), or to import their blogs from other services, such as Xanga, LiveJournal, and Blogger.

76. The Meta Platforms, Inc. Gifts feature allows users to send virtual "gifts" to their friends that appear as icons on the recipient's profile page. Gifts cost money to purchase, and a personalized message can be attached to each gift. Meta Platforms, Inc. users can also send each other "pokes," which are free and simply result in a notification to the recipient that he or she has been "poked" by the sender.

77. Meta Platforms, Inc. also has a Marketplace feature, which allows users to post free classified ads. Users can post items for sale, housing, jobs, and other items on the Marketplace.

78. In addition to the applications described above, Meta Platforms, Inc. also provides its users with access to thousands of other applications ("apps") on the Meta Platforms, Inc. platform. When a Meta Platforms, Inc. user accesses or uses one of these applications, an update about that the user's access or use of that application may appear on the user's profile page. Meta Platforms, Inc. uses the term "Neoprint" to describe an expanded view of a given user profile.

The "Neoprint" for a given user can include the following information from the user's profile: profile contact information; News Feed information; status updates; links to videos, photographs, articles, and other items; Notes; Wall postings; friend lists, including the friends' Meta Platforms, Inc. user identification numbers; groups and networks of which the user is a member, including the groups' Meta Platforms, Inc. group identification numbers; future and past event postings; rejected "Friend" requests; comments; gifts; pokes; tags; and information about the user's access and use of Meta Platforms, Inc. applications.

79. Meta Platforms, Inc. also retains Internet Protocol ("IP") logs for a given user ID or IP address. These logs may contain information about the actions taken by the user ID or IP address on Meta Platforms, Inc., including information about the type of action, the date and time of the action, and the user ID and IP address associated with the action. For example, if a user views a Meta Platforms, Inc. profile, that user's IP log would reflect the fact that the user viewed the profile, and would show when and from what IP address the user did so.

80. Social networking providers like Meta Platforms, Inc. typically retain additional information about their users' accounts, such as information about the length of service (including start date), the types of service utilized, and the means and source of any payments associated with the service (including any credit card or bank account number). In some cases, Meta Platforms, Inc. users may communicate directly with Meta Platforms, Inc. about issues relating to

their accounts, such as technical problems, billing inquiries, or complaints from other users. Social networking providers like Meta Platforms, Inc. typically retain records about such communications, including records of contacts between the user and the provider's support services, as well as records of any actions taken by the provider or user as a result of the communications.

81. As explained herein, information stored in connection with a Meta Platforms, Inc. account may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, a Meta Platforms, Inc. user's "Neoprint," IP log, stored electronic communications, and other data retained by Meta Platforms, Inc., can indicate who has used or controlled the Meta Platforms, Inc. account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, profile contact information, private messaging logs, status updates, and tagged photos (and the data associated with the foregoing, such as date and time) may be evidence of who used or controlled the Meta Platforms, Inc. account at a relevant time. Further, Meta Platforms, Inc. account activity can show how and when the user accessed or used the account. For example, as described herein, Meta Platforms, Inc. logs the Internet Protocol (IP) addresses from which users access their accounts along with the time and date. By determining, the physical location

associated with the logged IP addresses, investigators can understand the chronological and geographic context of the account access and use relating to the crime under investigation. Such information allows investigators to understand the geographic and chronological context of Meta Platforms, Inc. access, use, and events relating to the crime under investigation. Additionally, Meta Platforms, Inc. builds geo-location into some of its services. Geo-location allows, for example, users to "tag" their location in posts and Meta Platforms, Inc. "friends" to locate each other. This geographic and timeline information may tend to either inculpate or exculpate the Meta Platforms, Inc. account owner. Last, Meta Platforms, Inc. account activity may provide relevant insight into the Meta Platforms, Inc. account owner's state of mind as it relates to the offense under investigation. For example, information on the Meta Platforms, Inc. account may indicate the owner's motive and intent to commit a crime (e.g., information indicating a plan to commit a crime), or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).

82. Therefore, the computers of Meta Platforms, Inc. are likely to contain all the material described above, including stored electronic communications and information concerning subscribers and their use of Meta Platforms, Inc., such as account access information, transaction information, and other account information.

83.

## INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED

81.    I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A), and 2703(c)(1)(A), by using the warrant to require Meta Platforms, Inc.  to disclose to the government copies of the records and other information (including the content of communications) particularly described in Section I of Attachment B.  Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

## CONCLUSION

82.    Based on the forgoing, I request that the Court issue the proposed search warrant.

83.    This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711.  18 U.S.C. §§ 2703(a), (b)(1)(A) & (c)(1)(A).

94.    Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.

Dated: _May 23, 2022_ 

_____

Chris Reinke, Special Agent
Federal Bureau of Investigation

Sworn to before me and:

☑ signed in my presence.
☐ submitted, attested to, and acknowledged by reliable electronic means.

    this **23rd** day of May, 2022.

_____

Daneta Wollmann
United States Magistrate Judge

**ATTACHMENT A**   "REDACTED"

## Property to Be Searched

This warrant applies to information associated with the Meta Platforms, Inc. USER IDs:



which is stored at premises owned, maintained, controlled, or operated by Meta

Platforms, Inc., a company headquartered in Menlo Park, California.

**Particular Things to be Seized**

## I. Information to be disclosed by Meta Platforms, Inc.

To the extent that the information described in Attachment A is within the possession, custody, or control of Meta Platforms, Inc. Inc. ("Meta Platforms, Inc."), including any messages, records, files, logs, or information that have been deleted but are still available to Meta Platforms, Inc., or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Meta Platforms, Inc. is required to disclose the following information to the government for each user ID listed in Attachment A:

    (a)    All contact and personal identifying information, including for:



full name, user identification number, birth date, gender, contact e-mail addresses, Meta Platforms, Inc. passwords, Meta Platforms, Inc. security questions and answers, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers.

    (b)    All activity logs for the account and all other documents showing the user's posts and other Meta Platforms, Inc. activities;

(c)     All photos and videos uploaded by that user ID and all photos and videos uploaded by any user that have that user tagged in them;

(d)     All profile information; News Feed information; status updates; links to videos, photographs, articles, and other items; Notes; Wall postings; friend lists, including the friends' Meta Platforms, Inc. user identification numbers; groups and networks of which the user is a member, including the groups' Meta Platforms, Inc. group identification numbers; future and past event postings; rejected "Friend" requests; comments; gifts; pokes; tags; and information about the user's access and use of Meta Platforms, Inc. applications;

(e)     All other records of communications and messages made or received by the user, including all private messages, chat history, video calling history, and pending "Friend" requests;

(f)     All "check ins" and other location information;

(g)     All IP logs, including all records of the IP addresses that logged into the account;

(h)     All records of the account's usage of the "Like" feature, including all Meta Platforms, Inc. posts and all non-Meta Platforms, Inc. webpages and content that the user has "liked";

(i)     All information about the Meta Platforms, Inc. pages that the account is or was a "fan" of;

2

(j)     All past and present lists of friends created by the account;

(k)     All records of Meta Platforms, Inc. searches performed by the account;

(l)     All information about the user's access and use of Meta Platforms, Inc. Marketplace;

(m)     The types of service utilized by the user;

(n)     The length of service (including start date) and the means and source of any payments associated with the service (including any credit card or bank account number);

(o)     All privacy settings and other account settings, including privacy settings for individual Meta Platforms, Inc. posts and activities, and all records showing which Meta Platforms, Inc. users have been blocked by the account;

(p)     All records pertaining to communications between Meta Platforms, Inc. and any person regarding the user or the user's Meta Platforms, Inc. account, including contacts with support services and records of actions taken.

(q)     Any and all geo location data information.

## II.     Information to be seized by the government

All information described above in Section I that constitutes fruits, evidence and instrumentalities of violations of including violations of 18 U.S.C. §§ 1201(a)(5) and 2 (kidnapping), 18 U.S.C. §§ 2119(1) and 2 (carjacking), and

3

18 U.S.C. §§ 924(c)(1)(A)(ii) and 2 (use and brandishing a firearm during the commission of crime of violence), for the user IDs identified on Attachment A.